IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| MICHELLE LEAL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No.: 2:13-cv-00318-WCL-PRC |
| ) | |
| TSA STORES, INC., d/b/a ) | |
| THE SPORTS AUTHORITY, ) | |
| URBAN EXPRESS ASSEMBLEY, LLC, ) | |
| and EAST COAST CYCLE SUPPLY, ) | |
| INC., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF DEFENDANT, EAST COAST CYCLE SUPPLY, INC.

In its Motion for Summary Judgment, defendant, EAST COAST CYCLE SUPPLY, INC., seeks judgment as a matter of law on the ground that there is insufficient evidence to support any claim of product liability or product negligence against East Coast Cycle Supply, Inc., in this matter. Specifically, there is no evidence that East Coast Cycle Supply, Inc., engaged in any negligent or substandard conduct within the recognized bicycle design industry and, thus, no causal nexus between any act or omission of East Coast Cycle Supply, Inc., and any injuries plaintiff claims. Indeed, plaintiff fails to advance any expert testimony establishing the applicable standard of care for a mere bicycle designer such as East Coast Cycle Supply, Inc., in support of her claims of product liability or product negligence; fails to advance any expert testimony establishing any breach of the applicable standard of care by a bicycle designer such as East Coast Cycle Supply, Inc., in support of her claims of product liability and/or product negligence; fails to advance any expert testimony establishing that the alleged claimed defect in the bicycle was due to a dangerous design defect; and fails to advance any expert testimony to contest the un-controverted evidence that any defect in the subject bicycle was solely due to an *assembly* failure and not a *design* defect.

## I. **STANDARD OF REVIEW**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). However, Rule 56(c) does *not* require that a moving party negate its opponent's claim. *Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254, 1256 (7th Cir. 1990). Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an essential element to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corporation v. Catrett*, 377 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986).

The standard for granting summary judgment mirrors the directed verdict standard in Rule 50(A) which requires the Court to grant a directed verdict where there can be but one reasonable conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511 (1986). A scintilla of evidence in support of the nonmoving party's position is not sufficient to successfully oppose summary judgment. There must be evidence on which the jury could reasonably find for the plaintiffs. *Id.* at 1252; *In Re: Matter of Wildman*, 859 F.2d 553, 557 (7th Cir. 1988). No genuine issue for trial exists "where the record as a whole cannot lead a rational trier of fact to find for the nonmoving party". *Juarez v. Ameritech Mobile Communications, Inc.*, 957 N.E.2d 317, 322 (7th Cir. 1992), quoting, *Matsushita Electrical Industrial Company, Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986).

In this case, the record as a whole cannot lead a rational trier of fact to find for the plaintiff on her claims against East Coast Cycle Supply, Inc. There is simply no evidence that East Coast Cycle Supply, Inc., merely as a bicycle *designer*, engaged in any negligent or substandard conduct in this case. Accordingly, East Coast Cycle Supply, Inc.'s Motion for Summary Judgment should be granted.

## II. **STATEMENT OF MATERIAL FACTS**

On August 17, 2011, plaintiff, Michelle Leal, was injured while riding a K2 Breeze bicycle sold at the Sports Authority (TSA) when the handlebar shifted suddenly and without warning causing plaintiff to fall. (Tab 1, First Amended Complaint, para. 5) Defendant, East

Coast Cycle Supply designed the bike. (Tab 1, First Amended Complaint, para. 6) The bicycle was purchased, already assembled, for plaintiff by her husband at TSA in Merrillville, Indiana. (Tab 2, Plaintiff Answers to Interrogatories, number 2)

The plaintiff was riding on a designated trail for walking and bike riding near her home in Portage, Indiana. (Tab 2, Plaintiff Answers to Interrogatories, number 19) Plaintiff had been on the trail for a few minutes and was starting to go uphill when the accident occurred. (Tab 2, Plaintiff Answers to Interrogatories, number 21) Plaintiff had just gone under a highway underpass and was trying to get a good workout so she didn't switch to easier gears; as she started to go uphill, she put pressure on the handlebars in order to not lose speed and the handlebars came loose turning all the way to the left; plaintiff fell as a result and received injuries. (Tab 3, Plaintiff Answers to Interrogatories, number 24) The handlebars did not come completely off the bike; plaintiff's hands remained on the handlebars until she started to fall and attempted to catch herself. (Tab 2, Plaintiff Answers to Interrogatories, number 22) Plaintiff was not wearing a protective bicycle helmet at the time of the accident nor did plaintiff own a bike helmet. (Tab 8, Deposition of Plaintiff, pg. 145, line 23 thru 25 and pg. 146, line 1)

Jeff Bruno is the President of East Coast Cycle Supply, Inc. and was the President of East Coast Cycle Supply, Inc. on and before the date of plaintiff's accident. (Tab 4, Affidavit of Jeff Bruno, para. 1) East Coast Cycle Supply designs bicycles and bicycle accessories for sport specialty retailers domestically and internationally. (Tab 4, Affidavit of Jeff Bruno, para. 3) Bicycle *design* entails the creation and making of a plan for the construction of the form and structure of a bicycle emphasizing features such as its appearance and efficient functioning; but not, the actual physical construction of the bicycle. (Tab 4, Affidavit of Jeff Bruno, para. 4) Bicycle design culminates in a written drawing or blueprint of a bicycle, rather than, the manual connecting of physical parts and pieces of the bicycle. (Tab 4, Affidavit of Jeff Bruno, para. 5)

As a bicycle designer, East Coast Cycle Supply maintains a professional business relationship with many bike sellers including the Sports Authority (TSA). (Tab 4, Affidavit of Jeff Bruno, para. 6) The specific relationship with TSA, as it pertains to this case, entails agreement between East Coast Cycle Supply and TSA upon a desired price range for a particular type or model of bicycle, in this case a K2 Breeze bicycle. (Tab 4, Affidavit of Jeff Bruno, para. 7) Then, East Coast Cycle Supply designs such a bicycle and decides on the particular specifications for the bicycle, including considerations such as the use, function, application, and purpose to which

the bicycle will be put; material selection to meet such requirements; and the component parts and interaction of those parts to meet the bicycle's desired requirements. (Tab 4, Affidavit of Jeff Bruno, para. 8)

Based upon such specifications and design the bicycle is manufactured, built, and assembled by either the Yong Qi Bicycle Industrial Company of Taiwan or Zoom/HL Corporation of China. Yong Qi Bicycle Industrial Company and/or Zoom/HL Corporation delivers the subject bicycle in a 95% assembled state; meaning no handle bars, no front wheel and no peddles are attached when shipped and received by the bicycle seller, in this case, TSA. (Tab 4, Affidavit of Jeff Bruno, para. 9) TSA then sees to assembly, in some manner, and markets and advertises the bicycle for public sale. (Tab 4, Affidavit of Jeff Bruno, para. 10)

MJ Sureau is employed by East Coast Cycle Supply, Inc. He has served as the Head Bicycle Mechanic at Bike Depot North from 1998 to 2009, Senior Service Specialist at Iron Horse Bicycle Company from 2006 to 2008, and serves as the K2 Bike Brand Manager from August 2013 to present. In his experience he has inspected over fifty (50) bicycles for unique issues aside from maintenance. (Tab 5, Affidavit of MJ Sureau, para. 1) As a result of plaintiff's complaint in this case, he conducted an inspection of the subject bicycle on February 11, 2014, at the home of the plaintiff in the presence of all respective counsel of record. (Tab 5, Affidavit of MJ Sureau, para. 3) Based upon his inspection, the stem portion of the steering mechanism alleged to have failed in this case was manufactured by HL/Zoom Corporation. (Tab 5, Affidavit of MJ Sureau, para. 4) Mr. Sureau's inspection revealed no signs of damage to the stem. (Tab 5, Affidavit of MJ Sureau, para. 5) His inspection did not reveal stripping of the stem bolts from installation. (Tab 5, Affidavit of MJ Sureau, para. 6)

The stem bolts were then tightened to factory specification and Mr. Sureau secured the stem into the head tube of the bicycle; the bicycle stem was tightened in the presence of and with the consent of all counsel of record and was demonstrated to all to be tight by use of my body weight to attempt to move the stem, which did not move. (Tab 5, Affidavit of MJ Sureau, para. 7) His inspection further revealed that the stem wedge bolt was in proper working condition with no issues. (Tab 5, Affidavit of MJ Sureau, para. 8)

In Mr. Sureau's professional experience and opinion it is very common that consumers try to lower or raise the stem on a bicycle in order to adjust the height for comfort, however; most of the time the consumer does not re-tighten or re-install the stem to the correct torque. (Tab

5, Affidavit of MJ Sureau, para. 9) It is his expert opinion that the looseness of the handlebars and stem in this case that led to plaintiff's accident is not a design or manufacturers defect since the stem was in working condition at the time of my inspection and he was able to tighten the stem correctly. (Tab 5, Affidavit of MJ Sureau, para.10) It is his further opinion that the cause of this malfunction was either an assembly issue or that the customer tried to adjust the stem for comfort. (Tab 5, Affidavit of MJ Sureau, para. 11) It is his opinion that had this malfunction been due to an assembly issue, such would have likely been noticed by the plaintiff in the store if she had sat on the bicycle or when the customer left the store with the bicycle because the stem was completely loose at the time of his inspection and would have thus been very noticeable to the plaintiff or customer. (Tab 5, Affidavit of MJ Sureau, para. 12)

Plaintiff was provided with Mr. Sureau's expert findings and opinions back on February 17, 2014. (Tab 6, Defendant's Voluntary Production of Documents to Parties, pgs. 1, 3 and 4) However, plaintiff has wholly failed to identify, retain, or disclose any expert witness to opine either differently or in opposition to Mr. Sureau on the issue of the cause of the bicycle handlebars' malfunction or upon the issue of any role in such malfunction being attributable in any way to the *design* of the bicycle. (Tab 2, Plaintiff's Answers to Interrogatories, numbers 5 and 8) Nor has plaintiff produced any report of any expert witness to opine either differently or in opposition to Mr. Sureau on the issue of the cause of the bicycle handlebars' malfunction or upon the issue of any role in such malfunction being attributable in any way to the *design* of the bicycle. (Tab 7, Plaintiff's Response to Request for Production, number 3) In fact, plaintiff admits that she has not talked to any expert who even has any opinion on what may have caused the bike to malfunction- let alone a design defect. (Tab 8, Deposition of Plaintiff, pg. 159, line 6 thru 9 and line 24)

Plaintiff readily admits that she is not aware of anything East Coast Cycle Supply did to cause the accident. (Tab 8, Deposition of Plaintiff, pg. 154, line 17 thru 19) Plaintiff also admits that she only named East Coast Cycle Supply to this suit solely on the recommendation of TSA. (Tab 2, Plaintiff's Answers to Interrogatories, number 7) Plaintiff also admits that East Coast Cycle Supply never indicated to her that they assembled the bike at issue. (Tab 8, Deposition of Plaintiff, pg. 128, line 12 thru 17)

# III. ARGUMENT

## Plaintiff cannot make a prima facie showing supportive of any of her claims against East Coast Cycle Supply, Inc.

### 1. Plaintiff lacks sufficient *expert* evidence necessary to support her claims of product design negligence.

The undisputed material facts in this case make it clear that East Coast Cycle Supply, Inc. does not assemble bikes and that East Coast Cycle Supply, Inc. is merely a designer of the bicycle at issue herein. Defendant's expert's, MJ Sureau, opinion that the looseness of the handlebars and stem in this case that led to plaintiff's accident is *not* a design or manufacturers defect and that the cause of this malfunction was an *assembly* issue likely committed by either the plaintiff or plaintiff's husband (customer) is entirely uncontested by plaintiff. In fact, plaintiff has failed to identify, retain, or disclose any expert witness or expert report to opine either differently or in opposition to Mr. Sureau- despite being expressly requested to do so in written discovery.

Plaintiff admits that she has not talked to any expert who even has *any* opinion on what may have caused the bike to malfunction- let alone a design defect. Plaintiff readily admits that she is not aware of anything East Coast Cycle Supply did to cause the accident and admits she only named East Coast Cycle Supply to this suit solely on the recommendation of TSA.

In order to defeat a motion for summary judgment, the plaintiff must designate admissible evidence indicating that there is a genuine issue of material fact. *Kronmiller v. Schoenherr*, 665 N.E.2d 624 (Ind.Ct.App. 1996); *Dorsett v. R.L. Carter, Inc.*, 702 N.E.2d 1126, 1127 (Ind.Ct.App. 1998), *trans. denied* (1999). "When the issue of cause is not within the understanding of a lay person, testimony of an expert witness on the issue is necessary...." *Turner v. Davis*, 699 N.E.2d 1217, 1220 (Ind.Ct.App. 1998), *quoting Daub v. Daub*, 629 N.E.2d 873 (Ind.Ct.App. 1994). The plaintiff cannot sustain the burden of proof without qualified, credible testimony. *Whitted v. General Motors Corp.*, 58 F.3d 1200, 1206 (7th Cir. 1995).

*Whitted* held that the existence of a design defect could *not* be established by mere assertion. In questioning the propriety of a product's design, we have said that the law requires more than assertion: "That a product failed in a particular accident does not necessarily show 'defect,' however." *Id. (citing Bammerlin v. Navistar Int'l Transp. Corp.*, 30 F.3d. 898, 901 (7th

Cir. 1994). "Indiana requires the plaintiff to show that another design not only could have prevented the injury, but also was cost-effective under general negligence principles." *Id. (citing Pries v. Honda Motor Co.,* 31 F.3d 543, 546 (7th Cir 1994), holding that without expert testimony plaintiff could not establish a defective design). *Whitted,* 58 F.3d at 1206.

"To allow a plaintiff to establish the existence of a design defect by his mere assertion is ludicrous." *Pries v. Honda Motor Co.,* 31 F. 3d 543, 546 (7th Cir. 1994). In *Whitted,* the Court also held:

> ...under the Indiana Strict Product Liability Act a plaintiff may use circumstantial evidence to establish that a manufacturing defect existed *only* when the plaintiff presents evidence by way of expert testimony, by way of negating other reasonable possible causes, or by way of some combination of the two. *Whitted,* 58 F.3d at 1209 *(emphasis added).*

Thus, it is axiomatic that in order to show that a product contains a dangerous design defect, the plaintiff must be able to point to a defect. A defect is not necessarily shown simply because a product failed in a particular accident. This is because products liability and the doctrine of *res ipsa loquitur* are antithetical; *res ipsa* requires that the defendant have control over the instrumentality of harm, while products liability requires that the product leave the defendant's control. *Ford Motor Co. v. Reed,* 689 N.E.2d 751 (Ind. Ct. App. 1997)

In addition, expert testimony is required where the subject matter is distinctly related to some scientific field, business, or profession beyond the knowledge of the average lay person. *Jackson v. Trancik,* 953 N.E.2d 1087 (Ind. App. Ct. 2011); Evid R 702. Such is the case inherent in plaintiff's claim as to the quality and nature of the bicycle steering design at issue.

In this case, plaintiff wholly fails to advance any expert testimony establishing the applicable standard of care for a mere bicycle designer such as East Coast Cycle Supply, Inc., in support of her claims of product liability or product negligence; fails to advance any expert testimony establishing any breach of the applicable standard of care by a bicycle designer such as East Coast Cycle Supply, Inc., in support of her claims of product liability and/or product negligence; fails to advance any expert testimony establishing that the alleged claimed defect in the bicycle was due to a dangerous design defect; and fails to advance any expert testimony to contest the un-controverted evidence that any defect in the subject bicycle was solely due to an *assembly* failure and not a *design* defect.

Thus, because there is, at best, no evidence, and, at worst, insufficient evidence, to conclude that East Coast Cycle Supply, Inc. engaged in any negligent or substandard conduct that causally resulted in any injury to plaintiff, summary judgment for the defendant, East Coast Cycle Supply, Inc., must be granted.

## IV. CONCLUSION

As the Seventh Circuit Court of Appeals has noted, it is gratuitous cruelty to the parties and their witnesses to put them through the emotional ordeal of a trial when the outcome is foreordained. *Mason vs. Continental Illinois National Bank,* 704 F.2d 361, 367 (7th Cir. 1983). In such a case, summary judgment is appropriate. *Id.* This is precisely such a case. In this case, there is, at best, no evidence, and, at worst, insufficient evidence, to conclude that East Coast Cycle Supply, Inc. engaged in any negligent or substandard conduct that causally resulted in any injury to plaintiff. In short, East Coast Cycle Supply, Inc. simply did not breach any duty owed to plaintiff. Accordingly, no rational juror could find for plaintiff on her claims against East Coast Cycle Supply, Inc. Therefore, this Court should grant East Coast Cycle Supply, Inc.'s Motion for Summary Judgment.

    Respectfully Submitted,

    KOPKA, PINKUS, DOLIN, PC

By:   */s/Brock P. Alvarado*
      Brock P. Alvarado (#16348-45)
      9801 Connecticut Drive
      Crown Point, IN 46307
      Telephone: (219) 794-1888

# CERTIFICATE OF SERVICE

I hereby certify that on the __11th__ day of July, 2014, I electronically served the foregoing with Counsel of Record which sent notification to the following:

Colby Barkes
Blachly, Tabor, Bozik & Hartman
56 S. Washington Street
Suite 401
Valparaiso, IN 46563

Rick Meils
Meils Thompson Dietz & Berish
Two Market Square Center
251 East Ohio Street
Suite 830
Indianapolis, IN 46204

Daniel G. Suber
Lizabeth R. Hopkins
Kathryn C. Adams
259 W. Indiana Avenue
Valparaiso, IN 46383


By: /s/ *Brock P. Alvarado*
Brock P. Alvarado