UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| MICHELLE LEAL, et al. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE No.: 2:13 CV 318 |
| | ) | |
| TSA STORES, INC. d/b/a THE SPORTS AUTHORITY, URBAN EXPRESS ASSEMBLY, LLC, EAST COAST SUPPLY, INC., YONG QI BICYCLE INDUSTRIAL CO., LTD, GO CONFIGURE, INC., GUHLAM | ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Plaintiff, Michelle Leal (hereafter "Leal") suffered injuries in a bicycling accident. She filed a state court complaint against several defendants including East Coast Cycle Supply Inc. (hereafter "East Coast"), TSA Stores Inc. d/b/a The Sports Authority (hereafter "Sports Authority"), Urban Express Assembly LLC (hereafter "Express"), Yong Qi Bicycle Industrial Co. ("Yong Qi"), LTD., Go Configure, Inc., and Guhlam Thomas ("Thomas") (referred collectively herein as "Defendants") alleging that their negligence in designing, manufacturing, producing, and assembling the bicycle and/or a design defect with the bicycle were responsible for her injuries. The case was then removed to federal court. [DE 3].

Defendant, East Coast filed the present Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56, asserting that there is no genuine issue of material fact that it, by way of

defectively designing the bicycle, caused the injuries suffered by Leal. [DE 57]. Plaintiff did not oppose the motion.[1]

For the following reasons, East Coast's Motion for Summary Judgment will be GRANTED.

## **APPLICABLE STANDARD**

Before turning to the merits of East Coast's Motion, the Court notes that East Coast emphasized at the telephone conference that its motion was unopposed and thus, the Court could simply grant the motion. This is incorrect. A plaintiff's failure to respond "is not alone a sufficient basis for the entry of a summary judgment." *Anchorage Assocs. v. Virgin Islands Bd. of Tax Review,* 922 F.2d 168, 175 (3d Cir.1990); *Rivera–Torres v. Rey–Hernández,* 502 F.3d 7, 13 (1st Cir.2007) (reminding that "an unopposed motion for summary judgment should not be granted unless the record discloses that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law"). Rather, the court must determine whether the unopposed motion for summary judgment "has been properly made and supported." *Williams v. Murray, Inc.,* Civil No. 12–2122, 2014 WL 3783878, *2 (D.N.J. Jul. 31, 2014) (citation omitted). This requires more than just a cursory review of the filings. It requires the Court look

---

[1] Subsequently, after Leal was granted leave to file her Second Amended Complaint, the Magistrate Judge noted in a telephonic conference on October 16, 2014 that the Second Amended Complaint did not alter East Coast's pending motion for summary judgment, and that no response was forthcoming from Plaintiff, thereby making the Motion ripe for consideration. [DE 83]. While the motion was under consideration but other motions in the case were briefing out, Defendant, East Coast filed a Motion for Summary Ruling on its Motion for Summary Judgment [DE 74]. The Court is uncertain what the purpose of this motion was other than to alert the court to the pending status of East Coast's Motion for Summary Judgment and the fact that it was unopposed. Counsel for East Coast then contacted the Court the week of December 8, 2014 inquiring about the status of the pending motion and noting to the Clerk that it was "unopposed." In response, the Court conducted a telephonic conference on 12/15/2014, wherein counsel agreed that the motion was unopposed and agreed that the motion could be granted. However, as noted in this Court's recitation of the applicable standard, the Court cannot summarily grant the Motion simply because it is unopposed. Accordingly, the Court conducted its usual thorough and complete analysis of the record before entering this Opinion and Order.

at the submissions supporting the motion and determine that the motion is sound and within the parameters of the law.

That said, summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

In this case, the defendant has met its factual burden through their unopposed motion for summary judgment. *Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir.2003) ("[F]ailure to respond by the nonmovant as mandated by the local rules results in an admission."). By not responding to the motion for summary judgment, the plaintiff has conceded the defendants' version of the facts. *Brasic v. Heinemanns Inc.,* 121 F.3d 281, 286 (7th Cir.1997). This does not alter the standard for assessing a Rule 56 motion, but does "reduc[e] the pool" from which the facts and inferences relative to such a motion may be drawn. *Smith v. Severn,* 129 F.3d 419, 426 (7th Cir.1997).

## **FACTUAL BACKGROUND**

On August 17, 2011, Leal was injured while riding her bicycle, a K2 Breeze, which was purchased, already assembled, at Sports Authority by Leal's husband. [Second Amended

Complaint, ¶8; Plaintiffs Answers to Interrogatories, #2]. According to Leal, while riding the bicycle, the handlebar shifted suddenly causing her to fall. [Second Amended Complaint, ¶8]. Leal was cycling uphill and put pressure on the handlebars of the bicycle at which time the handlebars came loose turning all the way to the left. As a result of the bicycle malfunction and the resulting fall, Leal was injured. [App. Tab 3, Plaintiff Answers to Interrogatories, #24]. Defendant, East Coast, designed the bicycle. [Second Amended Complaint, ¶9].

Jeff Bruno ("Bruno") is the President of East Coast. [App. Tab 4, Affidavit of Jeff Bruno, ¶1 ("Bruno Aff. ¶___)]. East Coast designs bicycles for many companies and has an agreement with Sports Authority to design bicycles, particularly the K2 Breeze bicycle. [*Id.* at ¶7]. East Coast's specific relationship with Sports Authority involves an agreement between the two companies for East Coast to design bicycles within particular price points for particular models of bicycles. [Bruno Aff. ¶¶6-8]. Bicycle design entails creation and making a plan for construction of a bicycle but does not include the actual physical construction of bicycles. [*Id.* at ¶4]. Rather, the actual manufacture and assembly of the bicycles is done by either Defendant Yong Qi or Zoom/HL Corporation of China.[2] The bicycles are delivered to Sports Authority 95% assembled; the handle bars, the front wheels, and the pedals are not assembled. [*Id.* at ¶9].

After the incident that resulted in Leal's injuries, an employee of East Coast, MJ Sureau ("Sureau") inspected the bicycle at Leal's home with all counsel present. [App. Tab 5, Sureau Affidavit, ¶3].[3] The stem portion of the steering mechanism alleged to have failed in this case was manufactured by Zoom/HL Corporation and there were no signs of damage to the stem or any stripping of the stem bolts from installation. [*Id.* at ¶¶4-6]. Sureau tightened the stem bolts

---

[2] Zoom/HL Corporation is not a named defendant.
[3] Sureau has served as the Head Bicycle Mechanic at Bike Depot North from 1998-2009, Senior Service Specialist at Iron Horse Bicycle Company from 2006-2008, and currently serves as the K2 Bike Brand Manager. In his experience he has inspected over fifty (50) bicycles for unique issues aside from maintenance.

to factory specification and secured the stem into the head tube of the bicycle; the bicycle stem was tightened in the presence of and with the consent of all counsel. Sureau utilized his own body weight to demonstrate that the stem was tight and not moving. [*Id.* at ¶7]. The inspection further revealed that the stem wedge bolt was in proper working condition with no issues. [*Id.* at ¶8].

Having examined the bicycle, it is Sureau's expert opinion that the looseness of the handlebars was not due to any design or manufacturers defect since the stem was in working condition at the time of the inspection and he was able to tighten the stem correctly. [*Id.* at ¶¶9-10]. He further opines that the cause of this malfunction was either an assembly issue or that the customer tried to adjust the stem for comfort. [*Id.* at ¶11]. In his professional experience, Sureau indicates that it is common for consumers to lower or raise the stem on a bicycle to adjust the height for comfort and not re-tighten or re-install the stem to the correct torque. [*Id.* at ¶9]. Thus, it is Sureau's conclusion that the malfunction was not due to an assembly issue in that it would have been noticed by Leal in the store at the time of purchase because the stem was completely loose at the time of his inspection. [*Id.* at ¶12].

Leal was provided with Sureau's expert report on February 17, 2014. [App. Tab 6]. She did not retain an expert witness that opposes Mr. Sureau's opinion regarding the design and condition of the bicycle. [App. Tab 2, Plaintiffs Answers to Interrogatories, ¶8]. Leal has not produced any report of any expert witness to opine either differently or in opposition to Sureau on the issue of the cause of the bicycle handlebars' malfunction or upon the issue of any role in such malfunction being attributable in any way to the design of the bicycle. [App. Tab 7, Pltf's Resp. to Request for Production #3]. Leal further admits that she is not aware of anything that East Coast did to cause the bicycle accident and East Coast never indicated to Leal that they

assembled the bicycle at issue in this case. [App. Tab 8, Leal Dep. at p. 154, lines 17-19; p. 128, lines 12-17].

Based upon these facts, East Coast asserts it is entitled to summary judgment.

## **DISCUSSION**

Indiana's Product Liability Act (the "Act") governs all actions that are brought by a user or consumer against a manufacturer or seller for physical harm caused by a product regardless of the substantive theory or theories upon which the action is brought. Ind.Code § 34–20–1–1; *Stegemoller v. ACandS, Inc.,* 767 N.E.2d 974, 975 (Ind.2002). A product may be defective within the meaning of the Act because of a manufacturing flaw, a design defect, or a failure to warn of dangers in the product's use. *Baker v. Heye–America,* 799 N.E.2d 1135, 1140 (Ind.Ct.App.2003), *trans. denied.* The Act generally imposes strict liability for physical harm caused by a product in an unreasonably dangerous defective condition. Ind.Code § 34–20–2–1. For actions based on an alleged product design defect, however, the Act departs from strict liability and specifies a different standard of proof: "[T]he party making the claim must establish that the manufacturer or seller failed to exercise reasonable care under the circumstances in designing the product." Ind.Code § 34–20–2–2. Thus, the statute itself prescribes the applicable standard of care for allegations of a design defect such as the claim brought by the plaintiff here. *TRW Vehicle Safety Systems, Inc. v. Moore,* 936 N.E.2d 201, 209 (Ind.,2010).

In this case, as East Coast points out, Leal has not set forth any evidence whatsoever, in the form of competing expert testimony or otherwise, that would create a genuine issue of material fact as to whether East Coast's design of the bicycle fell below the standard of care required by the Act. In stark contrast, however, East Coast has produced unopposed expert testimony from Sureau in which he opines that the bicycle did not suffer from a design defect in

6

the handlebars and stem and there is no causal connection between the design of the bicycle's handlebars and stem and Leal's accident. Sureau further opines, without any contrary evidence from the plaintiff, that the bicycle appeared to him to malfunction from an assembly issue rather than a design issue.

Moreover, in *Whitted v. Gen. Motors Corp.,* 58 F.3d 1200, 1206 (7th Cir.1995), the Seventh Circuit, applying Indiana law, recognized that "allowing a plaintiff to establish the existence of a design defect by his mere assertion is ludicrous." Indeed, "[i]n plain words, an assertion is only a hypothesis until there is evidence to support its truth." *Ford Motor Co. v. Moore*, 905 N.E.2d 418, 431 (Ind.App. 2009) (opinion vacated on other grounds).

Here, as East Coast states, Leal has not even attempted to prove more than the "mere assertion" in her Complaint that the design of the handlebars and stem were defectively designed. Leal herself testified in her deposition that she had no knowledge of anything East Coast did in designing the bicycle that caused her injuries. Thus, even her own testimony does not support a design defect claim against East Coast. Accordingly, there are no genuine issues of material facts to support the assertion that East Coast defectively designed the bicycle. East Coast's Motion for Summary Judgment is GRANTED.

## **CONCLUSION**

"Summary judgment is not a discretionary remedy. If the plaintiff lacks enough evidence, summary judgment must be granted." *Jones v. Johnson,* 26 F.3d 727, 728 (7th Cir.1994), *cert. granted* 513 U.S. 1071, 115 S.Ct. 713, 130 L.Ed.2d 621 (1995). That is precisely the situation with respect to the present claim, and the defendant's motion for summary judgment [DE 57] must be granted. Likewise, its Motion for Summary Ruling [DE 74] is GRANTED.

This Entry does not resolve all claims against all parties. As a result, no partial final judgment shall issue at this time.

Entered this 17th day of December, 2014.

s/ William C. Lee  
United States District Court