IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION


| | | |
|---|---|---|
| MICHELLE LEAL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| Vs. | ) | CASE NO.: 2:13-CV-00318-WCL-PRC |
| | ) | |
| TSA STORES, INC. d/b/a THE | ) | |
| SPORTS AUTHORITY, URBAN | ) | |
| EXPRESS ASSEMBLY, LLC, | ) | |
| And EAST COAST CYCLE | ) | |
| SUPPLY, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT, TSA STORES, INC. D/B/A THE SPORTS AUTHORITY'S,
MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Comes now the Defendant, TSA Stores, Inc. d/b/a The Sports Authority (hereinafter "TSA"), and files this memorandum in support of its motion for summary judgment. For the reasons stated herein, there exists is no genuine dispute as to any material fact, and TSA is entitled to judgment as a matter of law.

**I.      Statement of Material Facts**

TSA contends that the following facts are not genuinely disputed:

A.      No warranties for the bicycle at issue were given to the plaintiff by TSA; and

B.      TSA did not assemble the bicycle at issue.

**II.      Background**

This case arises from a bicycle accident. On August 17, 2011, the Plaintiff, Michelle Leal, was riding a K2 Breeze bicycle purchased by her husband, Robert Leal, from TSA on a trail in Portage, Indiana, when the handlebars of the bike shifted suddenly, causing the Plaintiff to fall. *Plaintiff's Second Amended Complaint, ¶8.* As a result of her fall, the Plaintiff contends that she was injured. *Plaintiff's Second Amended Complaint, ¶20.*

## A. Purchase of the Bicycle from TSA

On July 27, 2011, approximately three weeks before the accident, Robert Leal purchased the K2 Breeze bicycle from TSA. *Bicycle Sales/Repair Ticket No. 3126299.* Robert had seen the bike previously while shopping at TSA with the Plaintiff. *Deposition of Robert Leal, P. 11, L. 10-15.* At that time, the Plaintiff told Robert that she liked the bike. *Deposition of Robert Leal, P. 11, L. 10-15.* Robert returned to the store two weeks later and bought the bicycle as a surprise for the Plaintiff. *Deposition of Robert Leal, P. 11, L. 22-25, P. 12, L. 1-3.*

When Robert arrived at TSA, he immediately walked to the area of the store where the bicycles were displayed and located the bike. *Deposition of Robert Leal, P. 12, 7-14.* The bicycle was already assembled and sitting on the sales floor. *Deposition of Robert Leal, P. 12, L. 18-22.* Robert did not sit on the bike, take the bike for a test ride or otherwise test the soundness of the bicycle. *Deposition of Robert Leal, P. 12, L.23-25, P. 13, L. 1-6.* Robert did not ask the TSA sales associate any questions about the bike before he purchased it. *Deposition of Robert Leal, P. 14, L. 3-5.*

Before Robert completed his purchase of the bicycle, a TSA sales associate performed a "point system check" of the bike. *Deposition of Robert Leal, P. 13, L. 7-11.* The TSA employee took the bicycle to the back of the store. *Deposition of Robert Leal, P. 14, L. 22-23.* Robert did not accompany the employee to the back of the store and was not present while the employee preformed the point system check. *Deposition of Robert Leal, P. 14, L. 24-25, P. 15, L. 5-7.* Once the check was complete, the TSA employee returned the bicycle to Robert and said he could pay for the bike. *Deposition of Robert Leal, P. 15, L. 8-9, L. 16-20.* Robert did not ask any questions of the TSA employee after the check was complete. *Deposition of Robert Leal, P. 15, L. 13-15.*

Robert paid for the bicycle, a total price of $249.97. *Bicycle Sales/Repair Ticket No. 3126299.* In the process of purchasing the bicycle, Robert received a Bicycle Sales/Repair Ticket ("Ticket"). *Bicycle Sales/Repair Ticket No. 3126299.* Robert filled in his name, address and telephone number on the Ticket. *Deposition of Robert Leal, P. 16-24.* A sales associate filled in the description of the bicycle that Robert purchased. *Bicycle Sales/Repair Ticket No. 3126299.* Robert signed and dated the Ticket under a section entitled, "Agreement". *Bicycle Sales/Repair Ticket No. 3126299.* Robert did not read the Ticket before he signed it. *Deposition of Robert Leal, P. 19, L. 2-8.*

Robert admits that nothing prevented him from reading the Ticket before he signed the document under the section entitled, "Agreement". *Deposition of Robert Leal, P. 19, L. 18-20.* Robert further admits that he had no reason for not reading the Ticket. *Deposition of Robert Leal, P. 19, L. 21-23.*

The Ticket given to Robert at the time he purchased the bicycle contained another section entitled, "Release Agreement Bike Repair & Sale Only". *Bicycle Sales/Repair Ticket No. 3126299.* That section of the Ticket set forth various paragraphs, each of which was followed by a blank line and a statement that read, "Please Initial". *Bicycle Sales/Repair Ticket No. 3126299.* Robert admits that he wrote his initials next to each of the paragraphs and signed the "Release Agreement Bike Repair & Sale Only" section at the end. *Deposition of Robert Leal, P. 20, l. 3-8, P. 21, L. 3-14.* However, again, he did not read each of the paragraphs contained in that section of the Ticket before he initialed and signed the document. *Deposition of Robert Leal, P. 20, L. 11-13.* Robert further admitted that nothing prevented him from reading the paragraphs contained in the Ticket before he initialed the document. *Deposition of Robert Leal, P. 20, L.25, P. 21, L. 1-2.*

After completing the purchase, Robert loaded the bicycle into his Dodge Caravan and drove the bike to his house. *Deposition of Robert Leal, P. 22, L. 5-14.* Once home, Robert brought the bicycle into his house and placed it in the bedroom. *Deposition of Robert Leal, P. 23, L. 9-12.* Robert surprised the Plaintiff with the bike later the same day. *Deposition of Robert Leal, P. 24, L. 11-16.*

**B. Bicycle Sales/Repair Ticket**

Robert Leal completed a Bicycle Sales/Repair Ticket ("Ticket") as part of his purchase of the bicycle. *Bicycle Sales/Repair Ticket No. 3126299.* In addition to customer information and a description of the bicycle purchased, the Ticket contains a release agreement. *Bicycle Sales/Repair Ticket No. 3126299.* The release agreement is captioned with the statement, "Please Read Carefully Before Signing" and sets forth the following:

> I accept for use AS IS the equipment listed on this form and accept full responsibility for the care of the equipment. I have made no misrepresentations to this bicycle shop regarding my intended usage and riding ability.
>
> Please Initial: _____

I understand and am aware that bicycling is a **HAZARDOUS** activity.  I understand that the sport of bicycling and the use of this bicycle equipment involves a risk of personal injury to any and all parts of my body and that physical injury is a common occurrence of this sport.  I freely and expressly assume and accept any and all risks of injury or death resulting from the use of this equipment.

Please Initial:  _____

I agree that I hereby release this bicycle shop, the equipment manufacturer, and distributor, from any and all responsibility of liability for physical injuries to myself or others or property damage resulting from the use of this equipment.  Except to the extent that such claim might be based on the sole and exclusive negligence of this bicycle shop.  I agree NOT to make a claim against or use this bicycle shop, the equipment manufacturer, and distributor for injuries or damages relating to bicycling and/or the use of this equipment.

Please Initial:  _____

There are NO WARRANTIES, express or implied, including the implied warranty of merchantability, which extended beyond the description of the bicycle equipment listed on this form.

I have carefully read this agreement and release of liability and fully understand its contents.  I am aware that this is a release of liability and a contract between myself and this bicycle shop and I sign it of my own free will.  This agreement shall be effective and binding upon the parties hereto:

Please Initial:  _____


*Bicycle Sales/Repair Ticket No. 3126299*

The Ticket was initialed under each paragraph and signed twice by Robert Leal at the time he purchased the bike.    *Bicycle Sales/Repair Ticket No. 3126299.*

On August 17, 2011, the Plaintiff was riding the bicycle on a trail in Portage, Indiana, when the handlebars of the bike shifted suddenly, causing the Plaintiff to fall.  *Plaintiff's Second Amended Complaint, ¶8.*  The Plaintiff had ridden the bicycle at least twice before her fall. *Deposition of Robert Leal, P. 30, L. 1-4.*

III.    Argument

    A.  Standard of Review

A party may move for summary judgment, identifying each claim or defense on which summary judgment is sought.  *Fed.R.Civ.P. 56(a)*.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  *Id.*

A party seeking judgment bears the initial responsibility of informing the court of the basis for the motion, and identifying "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact'."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  This burden may be discharged by showing that there is an absence of evidence to support the nonmoving party's case.  Id. at 325.  The moving party may, if it chooses, support its motion for summary judgment with affidavits or other materials and thereby shift to the non-moving party the burden of showing that an issue of material fact exists.  *Kaszuk v. Bakery & Confectionary Union & Indus. Int'l Pension Fund*, 791 F. 2d 548, 558 (7th Cir. 1986).

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion merely by resting on its pleadings, but must instead come forward with specific facts showing that there is a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.,* 475 U.S. 574 (1986).

    B.    No Warranties were given to the Plaintiff.

In her Second Amended Complaint, the Plaintiff contends that TSA impliedly warranted that the bicycle at issue was of merchantable quality and in the proper condition for the ordinary use for which it was designed and used by the Plaintiff.  *Plaintiff's Second Amended Complaint, §17*.  The Plaintiff further contends that TSA breached those warranties as the bike was unsafe and not fit for the particular purpose for which it was intended.  *Plaintiff's Second Amended Complaint, §18*.

TSA gave no warranties with the purchase of the bicycle and sold the bike "as is".  The language used by TSA to disclaim the implied warranties, including the warranties of merchantability and fitness for a particular purpose, was conspicuous and otherwise complied with Indiana law concerning the exclusion of warranties.  Because the implied warranties were

properly disclaimed, TSA could not have breached the warranties as alleged by the Plaintiff. Consequently, summary judgment for TSA should be granted.

Indiana law provides that, "Unless excluded or modified, a warranty that the goods shall be merchantable is implied in a contract for their sale…." *I.C. 26-1-2-314*. In order to exclude the warranty of merchantability, Indiana law requires the language of the exclusion to specifically mention the term "merchantability" and, if the warranty is in writing, the exclusion must be conspicuous. *I.C. 26-1-2-316(2)*. In order to exclude an implied warranty of fitness, the exclusion must be in writing and must also be conspicuous. *I.C. 26-1-2-316(2)*. The language used to disclaim the warranty of fitness is sufficient if it states, for example, "there are no warranties which extend beyond the description on the face hereof." *I.C. 26-1-2-316(2)*. All implied warranties are excluded where the exclusion contains expressions such as, sold "as is". *I.C. 26-1-2-316(3)(a)*.

Indiana law has defined the term conspicuous to mean language that "when it is so written [that] a reasonable person against whom it is to operate ought to have noticed it." *I.C. 26-1-1-201(10)*. Language used to exclude a warranty is conspicuous if "it is capitalized or in larger, or other contrasting, type or color". I.C. 26-1-1-201(10). Whether a term or clause is conspicuous is a question of law for the court. *Perry v. Gulf Stream Coach, Inc, et al.,* 814 N.E.2d 634, 646 (Ind.Ct.App. 2004).

In this case, TSA's Bicycle Sales/Repair Ticket conspicuously excluded both the warranty of merchantability and warranty of fitness for a particular purpose. To that end, the Ticket contains a paragraph which states:

> There are NO WARRANTIES, express or implied, including the implied warranty of merchantability, which extended beyond the description of the bicycle equipment listed on this form.

The Ticket's exclusion of warranties is conspicuous. The Ticket contains the words "NO WARRANTIES" set out in capital letters while the remaining letters in the paragraph are written in lower case. The capital letters create a contrast in font that causes the "no warranties" language to stand out. The Ticket advises the purchaser to "PLEASE READ CAREFULLY BEFORE SIGNING" the terms of the sale, including the paragraph excluding all warranties. The Ticket then requires the purchaser to sign his initials indicating that he has read the warranty

disclaimer. The exclusion language, written in capital letters, is sufficient to sufficiently disclaim the warranties of merchantability and fitness. See, *Perry v. Gulf Stream Coach, Inc, et al.,* 814 N.E.2d 634, 646 (Ind.Ct.App. 2004) (finding that, because the purchase agreement invited the plaintiffs to read the reverse side of the agreement coupled with the fact that the implied warranties disclaimer was contained in a paragraph entitled, "Warranties", written in all capital letter and underlined, was a conspicuous disclaimer).

In addition to the conspicuousness of the disclaimer, the Ticket mentions the term "merchantability" as required by statute to disclaim the warranty of merchantability. The Ticket also states that there are no warranties "which extend beyond the description of the bicycle listed on this form", the precise language identified in the statute as sufficient to disclaim the warranty of fitness. Finally, the Ticket states that the purchaser accepts the bicycle "AS IS", again, the language cited by statute as sufficient to disclaim all implied warranties.

The disclaimer of warranties contained in TSA's Bicycle Sales/Repair Ticket are sufficient to disclaim the warranties of merchantability and fitness which otherwise would have been implied in the sale of the bicycle. Because those warranties have been properly disclaimed, TSA could not have breached the warranties. Therefore, TSA is entitled to summary judgment.

### C.     TSA did not assemble the bicycle at issue.

The Plaintiff contends that TSA negligently assembled the bicycle on which she was injured. *Plaintiff's Second Amended Complaint, ¶ 14.* However, TSA had an exclusive agreement with Defendant, Urban Express Assembly, LLC ("Urban Express"), whereby Urban Express was to assemble all of the bicycles at TSA's Merrillville store. In accordance with that exclusive agreement, TSA did not use its own employees to assemble bicycles, including the bike at issue in this case.

On February 1, 2011, Urban Express entered into an agreement with TSA by which it agreed to provide TSA with delivery, assembly and installation services for TSA's equipment, displays and consumer products. *Delivery, Assembly and Installation Services Agreement dated February 1, 2011, Section 2 (A).* That agreement contained an exclusivity provision by which the parties agreed that Urban Express would be the "sole and exclusive provider of Services with respect to the UX [Urban Express] Serviced Stores, including to the exclusion of Client's [TSA's] in-house employees..." *Delivery, Assembly and Installation Services Agreement dated February 1, 2011, Section 2 (A).* In accordance with that agreement, and during the relevant

period of time related to the Plaintiff's bicycle, all of the bicycles sold at TSA's Merrillville store were assembled exclusively by Urban Express and/or its employee Guhlam Thomas. None of the bicycles sold at that time were assembled by TSA's own employees. *Affidavit of Don Schmiege*. Moreover, the bicycle on which the Plaintiff contends that she was injured was not assembled by any employee of TSA. *Affidavit of Don Schmiege*.

As TSA did not assemble the bicycle in question due to its agreement with Urban Express, TSA owed no duty to the Plaintiff with regard to the bike's assembly. Therefore, summary judgment should be granted in favor of TSA.

## III. Conclusion

For the reasons set forth herein, TSA's Motion for Summary Judgment should be granted.

Respectfully submitted:

By:     */s/ Daniel G. Suber*_____

Daniel G. Suber, #21173-45
Kathryn C. Adams, #30973-64
Attorneys for Defendant, TSA Stores, Inc.
d/b/a The Sports Authority

**DANIEL G. SUBER & ASSOCIATES**
259 W. Indiana Avenue, Suite A
Valparaiso, Indiana 46383
Tel: (219) 548-2880
Fax: (219) 548-2881

## Certificate of Service

I hereby certify that on the 7th day of January, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

Colby Barkes
Blachly, Tabor, Bozik & Hartman
56 S. Washington Street, Suite 401
Valparaiso, IN 46383

John W. Mervilde
Meils Thompson Dietz & Berish
Two Market Square Center
251 East Ohio Street, Suite 830
Indianapolis, IN 46204

Tracy S. Wetzstein
Kopka, Pinkus, Dolin & Eads, P.C.
9801 Connecticut Drive
Crown Point, IN 46307

Jessica Williams Schnelker
Frost Brown Todd LLC
201 N. Illinois St., Suite 1900
P.O. Box 44961
Indianapolis, IN 46244-0961

and I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants: None.

*s/ Daniel G. Suber*
DANIEL G. SUBER
Attorney No. 21173-45
Daniel G. Suber & Associates
259 Indiana Avenue, Suite A
Phone: (219) 548-2880
Fax: (219) 548-2881
Email: suberlawgroup@aol.com
Attorneys for Defendant
TSA Stores, Inc. d/b/a The Sports Authority