UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| MICHELLE LEAL, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | No. 2:13 CV 318 |
|  | ) |  |
| TSA STORES, INC. d/b/a THE | ) |  |
| SPORTS AUTHORITY, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

## OPINION and ORDER

This matter is before the court on defendant TSA Stores, Inc. d/b/a The Sports Authority's ("TSA") amended second motion for summary judgment. (DE # 149.) For the reasons stated below, TSA's motion will be denied.

## I. BACKGROUND

*A. Factual Background*

The following facts are undisputed for purposes of TSA's motion. On July 27, 2011, plaintiff Michelle Leal's ("Leal") husband Robert purchased a bicycle from a Sports Authority store in Merrillville, Indiana. (DE # 149-5; DE # 149-6 at 10-11.) At the time of purchase, the bicycle was assembled and displayed on the sales floor. (DE # 149-6 at 12.) Robert wheeled the bicycle from the display to the front counter. (*Id.* at 51.) Robert did not notice any looseness or other problems with the handlebars while wheeling the bicycle to the front of the store. (*Id.*)

Before completing the purchase of the bicycle, a TSA sales associate, Emmanuel Hudson, inspected the bicycle and performed a "point system check" of the bicycle.[1] (DE # 149-5; DE # 149-6 at 13.) Robert was not present during the point system check. (DE # 149-6 at 13.) On the inspection checklist, Hudson check-marked the box indicating that the handlebars were checked and tight. (DE # 149-5.) TSA employees do not make any further adjustments or changes to the bicycles after this point system check is completed, and have no further contact with the bicycles unless a customer requests assistance loading the bicycle into his or her car. (DE # 149-10 at 52.) In this case, Robert loaded the bicycle into his own car. (DE # 149-6 at 22.)

At the time Robert loaded the bicycle into his car, he did not notice any looseness in the handlebars. (DE # 149-6 at 50.) He also did not notice any issues with the handlebars when he got home and put the bicycle away. (*Id.*) Leal rode the bicycle around the block the same day Robert brought it home. (DE # 149-6 at 28.) She rode the bicycle on two or three occasions prior to the accident, with her longest ride lasting approximately 30 minutes. (DE # 149-11 at 19.) During these rides, Leal never noticed anything wrong with the bicycle and never experienced any difficulties with the handlebars. (*Id.* at 23-24.)

However, three weeks after Robert purchased the bicycle, on August 18, 2011, Leal was riding the bicycle and put pressure on the handlebars and the handlebars

---

[1] Leal disputes that Hudson actually performed each aspect of the pre-sale inspection. (DE # 150 at 3.)

became loose and turned all the way to the left. (DE # 149-8 at 8.) Leal fell off the bicycle and was injured. (*Id.*) A police officer who arrived at the scene of Leal's accident stated that the nut securing the handlebars was so loose that it could be turned with his fingers. (DE # 151-7 at 11.)

  B. *Procedural Background*

On April 10, 2018, this court granted TSA's partial motion for summary judgment. (DE # 139.) However, additional issues having been raising by the parties during the course of the briefing of that motion, this court granted TSA leave to file a second motion for summary judgment, addressing Leal's claims for (1) negligent inspection; and (2) strict liability. TSA filed a second motion for summary judgment, which is now fully briefed and ripe for resolution.

In its motion, TSA argues that it is entitled to judgment as a matter of law with regard to both of Leal's remaining claims. First, it argues that there is no evidence that the pre-sale point system check of the bicycle was improperly performed, and thus no evidence that it breached any duty it owed to Leal. (DE # 149-1 at 1.) Second, it argues that there is no evidence that the bicycle was in a defective condition at the time it left TSA's control, and thus, it cannot be strictly liable for Leal's injury. (*Id.* at 2.)

**II. LEGAL STANDARD**

Federal Rule of Civil Procedure 56 requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In responding to a motion for summary judgment, the non-moving party must identify specific facts establishing that there is a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Palmer v. Marion County*, 327 F.3d 588, 595 (7th Cir. 2003). In doing so, the non-moving party cannot rest on the pleadings alone, but must present fresh proof in support of its position. *Anderson*, 477 U.S. at 248; *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The court's role in deciding a summary judgment motion is not to evaluate the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson*, 477 U.S. at 249-50; *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995).

## III. ANALYSIS

### A. *Negligent Inspection*

TSA has moved for summary judgment of Leal's negligent inspection claim on the basis that there is insufficient evidence that it breached its duty of care. "To prevail on a claim of negligence, a plaintiff is required to prove: (1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty by the defendant; and (3) an injury to the plaintiff proximately caused by the breach." *Ford Motor Co. v. Rushford*, 868 N.E.2d 806, 810 (Ind. 2007). "The element of duty is generally a question of law to be determined by the court." *Smith v. Walsh Constr. Co. II, LLC*, 95 N.E.3d 78, 84 (Ind. Ct. App.), *reh'g denied* (Apr. 18, 2018), *transfer denied sub nom. Walsh Constr. Co., II, LLC v. Case Found. Co.*, 110 N.E.3d 1146 (Ind. 2018). However, "[b]reach and proximate cause are almost always questions of fact to be resolved by a factfinder." *Id.* at 86.

"There is no requirement . . . that negligence be proven by direct evidence. 'It is a well-settled principle that [negligence] can be proven by circumstantial evidence alone.'" *Foddrill v. Crane*, 894 N.E.2d 1070, 1075 (Ind. Ct. App. 2008) (quoting *Thomas v. State*, 698 N.E.2d 320, 324 (Ind. Ct. App. 1998)). "When items of circumstantial evidence are relied upon to raise an inference of negligence, they must be of such significance and relationship to one another that a reasonable conclusion of negligence can be founded thereon." *Elkhart Cmty. Sch. v. Yoder*, 696 N.E.2d 409, 414 (Ind. Ct. App. 1998).

After a thorough review of the parties' arguments and the record, the court concludes that the evidence, viewed in a light most favorable to Leal, reveals genuine

5

issues of material fact, including but not limited to the question of whether TSA, through Hudson, negligently inspected the bicycle. While TSA points to Hudson's evidence that he inspected the handlebars and they were tight, and evidence that neither Robert nor Leal noticed any issues with the handlebars, Leal has pointed to evidence that the handlebars were loose at the time of her accident, three weeks and two or three rides after purchasing the bicycle. A jury could reasonably infer that, based on the circumstantial evidence, Hudson's inspection of the handlebars was negligent. It is up to a fact-finder to assess the credibility of the competing evidence. Therefore, the court must deny TSA's motion for summary judgment.

    B.    *Strict Liability*

Indiana's Strict Product Liability Act imposes strict liability on one who places into the stream of commerce any product in a defective condition unreasonably dangerous to any reasonably foreseeable user or consumer. *See* Ind. Code § 34-20-2-1 *et seq.* TSA argues that it is entitled to summary judgment with regard to Leal's strict liability claim because it claims there is no evidence that the bicycle was in a defective condition at the time it left TSA's control. (DE # 149-1 at 9.) However, as discussed in the preceding section, there exists a material question of fact regarding the condition of the bicycle at the time it was sold. Therefore, TSA's motion for summary judgment with respect to Leal's strict liability claim must also be denied.

## IV. CONCLUSION

For these reasons, the court **DENIES** defendant TSA's second motion for summary judgment (DE # 144) as moot, and **DENIES** defendant TSA's amended second motion for summary judgment (DE # 149). The court **ORDERS** the parties to file a joint status report regarding their willingness to engage in a settlement conference before a Magistrate Judge by **January 23, 2019**. A trial date will be set under separate order.

**SO ORDERED.**

Date: January 9, 2019

s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT